770 F.2d 452
 STATE OF TEXAS, Petitioner,
v.
UNITED STATES of America and Interstate Commerce Commission,
Respondents,
Missouri-Kansas-Texas Railroad Company, Missouri Pacific
Railroad Company, and Southern Pacific
Transportation Company, Intervening-Respondents.
The STATE OF TEXAS, Petitioner,
v.
UNITED STATES of America and Interstate Commerce Commission,
Respondents,
Road-Rail Transportation Company, Inc., Intervening-Respondent.
 Nos. 84-4169, 84-4386.
 United States Court of Appeals,
Fifth Circuit.
 Sept. 6, 1985.
 
 Jim Mattox, Atty. Gen., Justin Scott Wilson, Asst. Atty. Gen., Austin, Tex., for petitioner.
 John Broadley, General Counsel, H. Glenn Scammel, I.C.C., Washington, D.C., John P. Legendre, Dallas, Tex., John J. Powers, III, John P. Fonte, Dept. of Justice, Antitrust Div., Washington, D.C., for respondents.
 On Petitions for Review of Interstate Commerce Commission Decision Nos. 3962 and 39704.
 Before GARZA, POLITZ and DAVIS, Circuit Judges.
 POLITZ, Circuit Judge:
 
 
 1
 The State of Texas seeks review of orders of the Interstate Commerce Commission, issued under 49 U.S.C. Sec. 10505, granting exemptions from state and federal regulations to intrastate trailer-on-flatcar (TOFC) and container-on-flatcar (COFC) activity done in conjunction with intrastate rail transportation. Concluding that the I.C.C. went beyond the scope of the authority granted by the Congress, we grant the petitions for review and reverse the challenged orders.
 
 Facts
 
 2
 Several railroads operating in the State of Texas are engaged in the transportation of goods by combined rail and highway transportation. The rail carriers own trucks and using the TOFC and COFC rail/truck combination are able to contract with shippers for continuous carriage of goods between points whether served by rail or not. The entire rail portion of the transportation is intrastate. The entire highway portion of the transportation is intrastate.
 
 
 3
 The Railroad Commission of Texas asserted jurisdiction over these combination carriers because of the intrastate transportation of goods by rail. At the time these events occurred, Texas, along with most other states, had been given an interim or temporary certification by the I.C.C., authorizing it to regulate intrastate rail traffic. That certification has been terminated.[1]
 
 
 4
 After the I.C.C. exempted interstate TOFC and COFC activity from regulation, see American Trucking Association v. I.C.C., 656 F.2d 1115 (5th Cir.1981), two of the combination carriers petitioned the Railroad Commission of Texas for a similar exemption for intrastate operations. The Railroad Commission granted exemptions from regulation while the trailers and containers were being transported by rail but refused to exempt the highway portion of travel. The carriers sought relief from the I.C.C. which expanded the exemptions from regulation to cover all stages of the intrastate movement, both by rail and by motor carrier. It is those decisions, extending the exemption to totally intrastate highway transportation, that is the subject of the present petitions for review.
 
 Analysis
 
 5
 The thrust of the argument of the State of Texas is that the I.C.C. lacks jurisdiction over the trucking segment of the totally intrastate TOFC activities of the intrastate rail carriers. Without this jurisdiction, Texas maintains, the I.C.C. could not exempt the intrastate highway transportation from state regulation. We are constrained to agree.
 
 
 6
 The general jurisdiction of the I.C.C. over rail transportation is contained in 49 U.S.C. Sec. 10501. It cannot be gainsaid that the predicate for that authority is the interstate or foreign aspect of rail transportation. The reference in Sec. 10501(a)(1) is to transportation by railroad and by two specific railroad and intermodal functions, not including TOFC or COFC rail/highway activity. Section 10501 was amended by the Staggers Rail Act of 1980, 94 Stat. 1895 (codified in scattered sections of 49 U.S.C.), but no changes were made to Sec. 10501(a)(1). Section 10501(a)(2) makes abundantly clear that this grant of jurisdiction to the I.C.C. extends only to transportation having an interstate or foreign dimension, the transportation must originate in or traverse a sister state or foreign country.
 
 
 7
 The general jurisdiction of the I.C.C. over motor carrier transportation is found in Sec. 10521. This section also contains the jurisdictional prerequisite of interstate or foreign travel and excludes totally intrastate motor carrier transportation. The language of subsection (b) specifically provides that except as to certain passenger and express services, not pertinent herein, the congressional grant of jurisdiction to the I.C.C. "does not affect the power of a State to regulate intrastate transportation provided by a motor carrier." 49 U.S.C. Sec. 10521(b)(1).[2]
 
 
 8
 The United States and the I.C.C. cite 49 U.S.C. Sec. 10505, and our decision in American Trucking Associations v. I.C.C., in support of the I.C.C. decisions. We find neither controls. Section 10505 authorizes the I.C.C. to exempt rail carriers from regulation. The introductory language of Sec. 10505 belies respondents' contentions, for it specifically is limited to "transportation subject to the jurisdiction of the Interstate Commerce Commission under this subchapter," the subchapter being 49 U.S.C. Secs. 10501 et seq. As noted above, totally intrastate motor carriers are not subject to I.C.C. jurisdiction under this subchapter. Nor, we might add, under any other subchapter of this title.
 
 
 9
 Our decision in American Trucking does not direct a contrary conclusion. There the I.C.C. exempted interstate TOFC and COFC rail/truck transportation from regulation, and we affirmed, concluding that "the Commission had the authority under section 10505(a) to exempt motor carrier TOFC/COFC service provided by rail carriers." 656 F.2d at 1122. The rail travel in American Trucking was interstate; the motor carrier travel involved interstate transportation. In American Trucking we recognized that the I.C.C. properly exercised its authority to exempt from regulation that portion of rail and motor carrier transportation over which it had jurisdiction.
 
 
 10
 We are mindful that the I.C.C. has been given jurisdiction over intrastate rail traffic. A principal change occasioned by the Staggers Rail Act was the curtailment of the authority of the states to regulate that traffic. The I.C.C. has authority to exempt rail carriers from regulations. 49 U.S.C. Sec. 10505(a). Once exempted by the I.C.C., rail carriers are not subject to any regulations. The I.C.C. has authority "to exempt transportation that is provided by a rail carrier as a part of a continuous intermodal movement." 49 U.S.C. Sec. 10505(f). But to accept uncritically the I.C.C.'s argument that it can exempt intrastate trucking connected with intrastate rail travel from all regulation would be to court potential mischief. A small intrastate rail carrier could transport goods, in a trailer capable of TOFC movement, from the point of origination to its terminal, which might be close or at a distance. The trailer then could be loaded on a flatcar and moved by rail a few miles and thereafter continue its journey anywhere within the State of Texas, totally exempt from any motor carrier regulation. Extending the worst case scenario, one might envision a small intrastate railroad which operates many trucks. A trailer load is picked up by truck at Orange, Texas and transported hundreds of miles to the intrastate rail carrier's terminal on the eastern fringe of San Antonio. There the trailer is placed on a flatcar and transported across the city to a terminal on the western edge of that city. At that point, the trailer is removed from the flatcar, attached to a cab (perhaps the same one), and driven additional hundreds of miles across Texas highways to El Paso. That movement of goods would involve transportation by motor carrier across the entire State of Texas, except for the few miles across the city of San Antonio, but be completely free of regulation by state authorities.
 
 
 11
 We are not persuaded that in passing either the Railroad Revitalization and Regulatory Reform Act of 1976, 90 Stat. 31, or the Staggers Rail Act, or accompanying legislation, Congress intended to prohibit the states from regulating motor carriers that operate totally intrastate. The language in the statutes both before and after the recent amendments clearly indicates the contrary. In 1982 Congress amended 49 U.S.C. Sec. 10521(b)(1) which previously provided simply: "This subtitle does not affect the power of a State to regulate intrastate transportation provided by a motor carrier." Congress created three exceptions which now affect the power of the states over intrastate motor carrier transportation. None of these exceptions involve intrastate trucking by intrastate rail carriers in an intermodal setting. If Congress had intended to change the power of the states to regulate that activity, it could, and presumptively would, have added a fourth exception to the power of the states to regulate intrastate transportation by motor carriers. The Congress chose not to do so.
 
 
 12
 We conclude that intrastate transportation by a motor carrier, even if done in conjunction with a measure of intrastate rail transportation in the TOFC/COFC intermodal setting, is subject to regulation by the states. The I.C.C. exceeded its jurisdiction when it exempted intrastate rail carriers from all regulation of their totally intrastate motor carrier activities.
 
 
 13
 The petitions for review are GRANTED. The orders are REVERSED.
 
 
 
 [1]
 The I.C.C. decision terminating the temporary certification granted to Texas was recently affirmed by the Circuit Court of Appeals for the District of Columbia. The Railroad Commission of Texas v. United States, 765 F.2d 221 (D.C.Cir.1985)
 
 
 [2]
 As most recently amended, 49 U.S.C. Sec. 10521(b) provides:
 This subtitle does not--
 (1) except as provided in sections 10922(c)(2), 10935, and 11501(e) of this title, affect the power of a State to regulate intrastate transportation provided by a motor carrier;
 (2) except as provided in sections 10922(c)(2) and 11501(e), authorize the Commission to prescribe or regulate a rate for intrastate transportation provided by a motor carrier;
 (3) except as provided in section 10922(c)(2) of this title, allow a motor carrier to provide intrastate transportation on the highways of a State; or
 (4) except as provided in section 11503a and section 11504(b) of this title, affect the taxation power of a State over a motor carrier.